We have two cases this morning for argument. The first of these is number 13-1296, Kartner v. Alamo Group. Mr. Molloy. May it please the court, my name is Philip Molloy. I'm the attorney for the appellants in this case, Jack Kartner and Motrin, Inc. The district court's declaration that this case was exceptional under 35 U.S.C. 285 was based on its conclusion that appellants were frivolous in continuing to conduct discovery because they had no reasonable basis for believing that three claim terms were met by the two accused devices. Now there are two accused devices at issue in this appeal. First is the Tiger brake valve, which was accused of infringing both Apparatus Claim 5 and Method Claim 12. And second, the closed circuit Alamo system, which was accused of infringing the Method Claim 12 only. There's an interesting chart on page 14 of the red brief. Do you agree that that chart is accurate insofar as it talks about which claim limitations are involved with respect to which mollies? The red brief being Alamo's principal brief, your honor? Yeah, page 14. With respect to the Tiger mowers, if we agreed that the litigation with respect to the regulated by said relief valve issue was frivolous, then we wouldn't need to reach the other issues, correct? I don't believe so, your honor. The issue was conducting discovery on whether either of these products infringe either of the claims. Well, why would it be reasonable to conduct discovery if one of the claim limitations were clearly not satisfied? The discovery was related to the operation of the Tiger mower with respect to both claims. If the court would find that appellants had no business ever asserting infringement of Claim 5 for that issue, then I think you have to look at the overall circumstances of the case to see whether it should be declared exceptional. We conducted discovery. We never got to the stage of expert discovery or summary judgment or any consideration of the merits of the case, your honor. We were trying to find out how the system operated. With respect to the disconnected limitation, if I understand correctly, the district court's ruling with respect to that turned entirely on the fact that you hadn't raised the doctrine of equivalence earlier in the case in particular, that you hadn't disclosed that theory in response to the interrogatory. I think a fair reading is that the district court found that we should have, in our amended interrogatory response, indicated that we were seeking, we were asserting infringement under the doctrine of equivalence. We had asserted infringement under the doctrine of equivalence in the complaint, your honor. I didn't see that. Where is that in the complaint? To me, the complaint was in general. It was a general statement that infringement is occurring either literally or under the doctrine of equivalence. Where do I find that in the complaint? The complaint looks to be at A42, if that helps you. I don't know where your statement is in particular, but that's where the complaint seems to appear. Paragraph 19 of the complaint on A45, your honor. Was there any other reference to the doctrine of equivalence between the time of the complaint and the interrogatory answer? There was reference to that in Mr. Kartner's deposition testimony, where he said on a number of occasions that he believed that the accused devices were equivalent in some way to what was in the patent, your honor. But there was never any request by... Did he mention the disconnected limitation? I don't believe so, your honor. The interrogatory question did not ask whether appellants were asserting infringement under both literal infringement and the doctrine of equivalence. At that time, there were no local patent rules that required appellants to declare whether they were asserting infringement under the doctrine of equivalence. The local patent rules were promulgated long after this case had been filed, and the district court judge never ordered the parties to apply the local patent rules. In the claim construction proceedings that the parties proposed to the court early in the case, there was no requirement that any infringement contentions be provided, or that the declaration of whether it was literal infringement or under the doctrine of equivalence be given. Also, in two depositions of Mr. Kartner, Allen whenever asked him whether infringement was being asserted under the doctrine of equivalence. We were not hiding our intention to assert infringement under the doctrine of equivalence. We were never asked, never required at that stage of fact discovery to so state in this circumstance. I don't understand. The interrogatory says, Describe in detail how the assertive patent claims apply or correspond to each accused product, providing a claim chart explaining how each limitation of the assertive patent claim is present in each accused product. If your argument on disconnected is based upon equivalence, wouldn't your claim chart have to have explained that? Not if it wasn't, it asked us to identify the elements in the accused devices that corresponded to the claim elements, and we identified with respect to No, it says explain how each limitation of the assertive patent claim is present in each accused product. Explain how. How is it present? What was your answer? Our answer was we, corresponding to the element corresponding to the motor being disconnected from the pump. Tell me where exactly your answer is. Exhibit B on A664, Your Honor. Right, A664. And where exactly is your answer? When hydraulic fluid flow from the pump to the motor is stopped. Just tell me what row. I'm sorry. In the first row of the table, Your Honor. First row of the table. Because disconnected is in the preamble of the claim. There it is. The print's really small. I think I need reading glasses at this point, but I'm fighting it. I've got mine on. I appreciate that, Your Honor. The last four lines of the text in the middle in the right-hand column. Such system is decelerated when hydraulic fluid flow from the pump to the motor is stopped. And that is the equivalence to the motor being disconnected from the hydraulic pump. In the tiger. And what the district court said with respect to literal infringement is that stopping the flow is not the same thing as disconnecting, right? You're right, Your Honor. And you're not fighting that. We're not fighting that. We were not going to argue literal infringement of 1012 for that reason. The district court also found that our doctrinal equivalence position would vitiate the doctrine. The appellants contend that's not true. Their position was reasonable. The motor. All the motor sees is the input of pressurized hydraulic fluid or not. And if the motor is disconnected from the pump physically, if the hydraulic fluid from the pump is directed somewhere else to a to a tank, or in the case of the Alamo closed circuit system, if the swashplate is moved to neutral so that no fluid is being pumped, it's all the same to the motor. It's not getting driven by hydraulic fluid. Well, I don't understand that the district court found your doctrinal equivalence argument to be frivolous. I think that he rested entirely on the theory that it hadn't been raised in response to the interrogatory answer when it should have been. That's correct, Your Honor. And we disagree. We don't think that there was a requirement for us to specify that the doctrinal equivalence was at issue. Doesn't that go contrary to the entire thrust of the development of Rule 26 over the last 20 years? The idea is not to lie in ambush. There's no lying in ambush, Your Honor. We were in fact discovery. We were, you know, the next stage of the case was to be expert discovery. And there's no question in my mind that our expert would have had to have opined on the application of the doctrinal equivalence. He would be someone of ordinary skill in the art who could testify to whether the fused devices operated in an equivalent manner as disconnecting the motor from the pump. Remind me as to how the doctrinal equivalence first surfaced. Was that at the time the motion was filed to deem this to be an exceptional case? The motion was filed, and in our opposition to the motion, Your Honor, we indicated that we intended to assert infringement under the doctrinal equivalence with respect to the disconnected term. So this was after the summary judgment? There was no summary judgment, Your Honor. We sought a stipulation of dismissal before the close of fact discovery. It never got to any adjudication or any consideration at all of the merits. The first time the merits of the case were ever considered was by the magistrate judge in coming up with her initial report and recommendation. I don't fully understand the process. So explain to me procedurally when these things occurred. My understanding is that there was a claim construction order. Prior to the claim construction order, you had been arguing as best as I can tell, and please tell me if I'm wrong because the facts are a little complicated, but that the deceleration literally meets the disconnected limitation. Hadn't you? I mean, isn't that what you had been arguing was how the claim should be construed? We were arguing that disconnected, which was in the preamble of Claim 12 and in a body of another claim that wasn't at issue at the end of the case, we were arguing that disconnected should be construed to mean stopping the supply of pressurized hydraulic fluid to the motor. I don't remember, but didn't you argue pretty much exactly what you have here in this claim chart is what the definition ought to be for literal infringement? Yes, Your Honor. We were seeking a construction that would allow us to assert literal infringement. But see, that's the thing. If the construction you were seeking is exactly this one for literal infringement, and then the claim construction comes out against you, don't you have an obligation at that point in time to update the interrogatory to make it clear that even if you don't agree with us that this is in fact the construction that would literally cover the accused devices, it is nonetheless a basis upon which we can argue equivalence. I mean, don't you have an obligation to update interrogatories when circumstances change? Your Honor, we have an obligation to update interrogatories when facts require a different answer. I think we answered the interrogatories. We answered what the interrogatories asked. The interrogatories did not ask to indicate whether it was infringement under the doctrine of equivalence or literal infringement. They asked to identify the elements in the accused devices that corresponded to the apprentices. No, you said that before, and I corrected you before. They asked you to explain how each limitation is present in the accused devices. Not where, not what corresponds, but how. How its presence is there, which implies explaining how you think it's there. And your explanation to me, especially in conjunction with your arguments on claim construction, seems to me quite clearly to be asserting that it is literally present by virtue of these two things being the same in your claim construction. So I guess I don't read this personally, and clearly the district court did not, as articulating a belief on your part that they're equivalent. I'm not saying it's a bad argument, but it doesn't seem to me to be the argument that the court interpreted you as having made. And so I guess once claim construction was issued, I'm wondering if at that point at least there wasn't an obligation on you to go back and correct. We did not believe so, Your Honor. We believe that the response to the interrogatory, which was actually amended after the claim construction, I believe. But if you were alleging that something infringed on the doctrine of equivalence, don't you have an obligation to explain why they're either interchangeable or meet the same function, way, and result? Because if you have to explain not whether it infringes or not what infringes, but how it infringes, isn't it only possible to allege how by virtue of explaining the how, namely the subject, the function, way, result part? That's not the way we read the interrogatory, Your Honor. We read the interrogatory as requiring us to point out the elements in the accused devices that corresponded to the claim elements. There probably were a number of elements in those claims that would have had to be met by the doctrine of equivalence. Timing-wise, were there expert reports or anything at the time all this had occurred? Where were you in that phase of the process? When the interrogatory response was made or? Let's say by the time claim construction. We were in the beginning stage of discovery, Your Honor. So when the claim construction was issued, there were not expert reports yet or anything like that that had been exchanged? No. We never got to any expert discovery, Your Honor. The case was dismissed before expert. Yes. After the final two depositions of Mr. Hardy with respect to the Tiger mower and Mr. Eaton with respect to the closed-circuit system, we approached defendants and proposed that we stipulate a dismissal. And we ultimately consented to a consent judgment of non-infringement and dismissal of the case. It wasn't until those final two depositions that we had a full understanding of the operation of the two systems from people who knew how they worked. Okay. Thank you, Mr. Moy. We'll give you two minutes to rebuttal. Mr. Schwartz. Thank you. May it please the Court. Brian Schwartz for Alamo Group. The exceptional case finding should be affirmed, Your Honor. Let me just address the last point that was raised about the stipulation to the dismissal. I think that occurred also in the Highmark case, and that didn't prevent an exceptional case finding against Claim 102. I don't think they're arguing that the dismissal prevented an exceptional case finding. I think, for example, with respect to the disconnected limitation, they're saying that we didn't understand the interrogatory to cover the doctrinal equivalence, and that with respect to at least that aspect of the case, we shouldn't be hit with an exceptional case finding because the district court found that we answered the interrogatory incompletely. That may be true, Your Honor. I understood, at least in their reply, that they were also arguing that that somehow mitigated or negated the subject of bad faith, and to the extent they were arguing that the stipulation somehow did that, I just wanted to point out that I don't believe that it did. The reasons the exceptional case findings should be affirmed are, I think, pretty straightforward and well within address the disconnected limitation, because that's a bit troubling. The interrogatory didn't mention the doctrine of equivalence. They had mentioned the doctrine of equivalence briefly in the complaint, and should the fact that somebody, even before expert discovery, doesn't discuss the doctrine of equivalence in response to a perhaps unclear interrogatory really result in an exceptional case finding with respect to that item? Well, Your Honor, I think the best way I can address that is with Judge Moore's comment, which was the timing aspect of it. The claim construction order came out, and then the answers to the interrogatories were amended, and the answer was identical to the previous answer. And so, in our view, there was some obligation at that time to state- When you say the answers were amended, what was amended about them? What wasn't amended, Your Honor, was the explanation of the disconnected limitation and how it was met by the stopping of the fluid. It doesn't even add anything about the aspects of the systems that would stop the fluid. In other words, I think now in their briefs they're talking about diversion of fluid. They're talking about some of the aspects of how this would occur in the Tiger mowers, and that's not pointed to in the interrogatory answer either. So while I can't say what exactly was amended, I do know that the chart, that right-hand column you were looking at, does not change from the originals to the amended. Well, does the amended interrogatories discuss the doctrine of equivalence at all? I don't believe it does, Your Honor. No. I mean, the words aren't referred to, function way results not referred to, nothing of that nature. But you're not contending, are you, that the doctrine of equivalence theory was deliberately kept from you, right? I think – I don't want to say that Mr. Moy was somehow lying in the weeds on this. I think the problem is that the argument, when it comes later in the 285 proceeding, looks very suspicious substantively when you haven't seen it at all during the case. Well, there was a reference to it in the complaint, right? Sure. There was a very general reference, as there is in a lot of complaints, to the doctrine of equivalence, but it wasn't specific as to claim element. It wasn't specific as to the mower. It wasn't specific to anything. Well, but I guess what they're arguing is the Northern District of California type rules at that time didn't exist in this district, and that it was permissible for them to lay out their doctrine of equivalence theory when it came time for the expert reports. That's their argument. Is that an unreasonable position? I think it's very formal, Your Honor, to rely on the absence of a rule when there's other – the spirit of the federal rules would have called for an update to that interrogatory, especially the timing of it. When does the local rule come into effect? The local rule does not come into effect until well after the case. It's at least a year later, is my recollection. But it's the rule that's – like you say, it's modeled after – as Judge Dyke said, it's modeled after rules that previously exist. But we see a lot of interrogatories in patent cases, as you might suspect, and quite often – I can't say it's all the time. I have no empirical knowledge, but at least anecdotally, I know that on many occasions, I've seen interrogatories that expressly indicate with lots of semicolons so that it's still just one interrogatory, specify whether you're alleging literal and or doctrine of equivalence infringement, limitation by limitation. I'm not saying there's a burden on you to have to do that, but we're not – what we're considering here is an exceptional case finding, which is something that ought to be treated as the exception. And so given that you didn't do that, is it really fair to hold them to the standard of having to articulate it that way? Well, I think that's a valid point, Your Honor, but I think that the way this is looked at is from the litigation as a whole, looking backwards, and this is just one piece of very problematic litigation that involved a very implausible theory about this third line. It involved an argument that was refuted by the prosecution history and the characterization of that prosecution history and what was said in the prosecution. I know. Part of the problem I'm also having is I have a little bit of trouble understanding exactly what the district court hung its hat on as the basis for his decision to award fees. In particular, was it, in your opinion, the frivolity of their claims or litigation misconduct or both? How do you read his opinion in terms of articulating with precision the specific thing that caused him to find the case exceptional? Well, I think the decision is very much focused on the frivolity of the infringement positions. In terms of litigation misconduct, while that's a separate prong in case law, I think asserting frivolous infringement positions is also part of that prong. But the connotation of litigation misconduct is really something somewhat different where there's misbehavior, and the only misbehavior that's really identified here and it's more inchoate is this problem that the district court had with seeing this argument again in 285 proceedings about the equivalence position when it hadn't been. There's nothing in the record. That was a very helpful answer. So let me ask you one more question, which is tell me what your best argument then is for why their position was objectively baseless. Obviously, we are a little bit troubled by the disconnected. Is there another limitation that you say, well, even if you think they may not have been objectively baseless in the positions that they took on disconnected, they were nonetheless objectively baseless in the relief valve or something else, and all we need is one basis for non-infringement for them to know they shouldn't have gone forward. And let me follow on that same question, which is supposing we agree with you on the relief valve limitation, but we're troubled by the disconnect limitation, does it change the numbers in the course calculation? Let me address that question first before I forget it. I think the chart that Judge Dyk was referring to really was designed to be fair and to show quadrants so that, and I'm not suggesting it's going to look that we defer to this chart, but it really is designed to say, well, exactly what you said, what happens if. And so yes, I would presume that if for some reason the disconnected limitation is not found to have been frivolous or subjectively asserted bad faith, that that would change the calculus, and we proposed how that would happen. It's my understanding of the case law that you go claim by claim, and here we have claim by mower, by claim by mower, by claim by mower, by claim by mower, so there's four quadrants. And so I think you can figure out just from the quadrants what would happen that would affect the fees. Would it be fair to say that the regulator of the relief valve, if we were to sustain the district court with respect to that, that would be the end of any issues to the tiger mower? Correct, Your Honor. But that in order to sustain the award of fees with respect to the Alamo mowers, we'd have to go with you on the disconnected issue. That's correct, Your Honor, and we've been very up front about that. In the cross appeal, what we say is that exactly what you're pointing out, which is that, and Highmark came later, but it made very clear that you're doing this on a claim by claim basis, and we take that to mean a claim by mower, by claim by mower, as I said. But the decision of the district court didn't seem to connect that up when it was doing the fee part of the decision, so there has to be some logic, a logical connection between the date that's selected and the frivolous claims. So that's all we're trying to say in our cross appeal, a very simple point. We should have been awarded fees on an earlier date because of the frivolity of the claims, at least against the tiger mowers from very early on. Now to address Judge Moore's point, in terms of the best positions, the two are very similar. What you have without a loss of fluid limitation is the reliance on the prosecution history by the court below and the Ewald patent and how it was distinguished and how the claim was amended, and that is very classic. To take an infringement position that's contrary to the prosecution history is very, very classic within the case law. It's almost a paradigm case for having an exceptional case finding. One of the reasons is you don't really even need to get to subjective bad faith because you are charged as the patentee with understanding what your argument was to the patent office, and I think that Highmark cites the Martek case. That's one of the cases that I'm thinking of that says that. You can't ignore what you said in the prosecution history or say that there was no subjective knowledge of that. So that's a very strong position, and the courts below, the judges below were absolutely right in how they characterized it to the point that it wasn't even challenged. The only thing they challenged was this idea that the courts ignored the method aspect of the claim, but Ewald was distinguished as a configuration on the same method claim. So it really, that argument doesn't hold together very well. I just want to be really clear. Were there other arguments that you presented that perhaps the district court didn't address as to why claims against Alamo mowers might have been frivolous even if the court didn't agree with you and disconnected? I'm just wondering, once he reached one, did he stop analyzing? Was there other stuff that you presented that you think maybe he didn't address because he didn't have to because he found it on this basis? I don't think that happened, but I will say that the aspects that were chosen were representative. There was a time limit, a page limit. Those that were chosen were chosen as the strongest examples of why the case was frivolous from the beginning. I mentioned earlier this third line, and one of the problems with it is you can see just from how it's drawn that all the fluid doesn't, that the fluid takes different paths into the makeup line, which is one portion of this line that's drawn across our schematic, and so that fluid doesn't pass through the relief valve, so-called relief valve, at all. So that valve doesn't control that. The last time the parties were here on appeal, this was argued ad nauseum that the relief valve had to control whether fluid was in the third line and whether it was not in the third line. I understand, but just so we're clear about this, are you saying that you agree that we would have to remand the district court if we disagreed with you on the disconnected limitation? I don't think you would need to remand, Your Honor. You could affirm the exceptional case finding as to the tiger mowers, and you could either choose to remand with guidance on recalculating the fees, and that guidance could include from which date the fees should be calculated. I would say, as we have in our brief, from August 2007, because that's the date that the tiger schematic- Well, the award as it stands now can't continue if we disagree with you on the disconnected point, right? I think that's correct, Your Honor. As I said under Highmark, I think it has to be tied, so I can't really say we want more fees because it's not tied to the claims and say that it's not tied to the claims when you ask that question. Okay. Thank you, Mr. Schwartz. Mr. Moore, you have two minutes. I just want to address one issue, Your Honor, and that's with respect to the regulated by the relief valve issue. On page 22 of our opening brief, there's a long quotation from the deposition to Mr. Hardy who was the former Illinois employee who had intimate understanding of how the tiger mower worked, and what I was asking him was to tell us how that brake valve worked in the hazardous condition that the patent was intended to address where some emergency occurs and the operator, instead of turning the brake valve off, just shuts down the engine, the power to the entire system. And he described that's exactly the situation in which the check valve would open up and allow some flow back from the outlet side of the motor back to the inlet side of the motor. And what he said was, and this is my leading questions, I said, and during the time it takes for the motor to stop, some of the fluid that went through the 40,000th orifice would then pass through the relief valve, correct? He said yes. And back into the return line? Yes. So his testimony confirms that the flow of the tiger mower back through that return line first has to go through the relief valve. That flow is regulated by the relief valve. I've never comprehended why this report found to the contrary unless, as we argued, perhaps they were reading the claim as saying that only the relief valve can be relied on to allow flow through that conduit. And I don't think that's a proper reading of the claims and I think we are entitled to find from Mr. Hardy exactly how this system operates. Okay. Thank you, Mr. Moyer. Thank both counsels. Appreciate your candor from both of you.